IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 10-CV-01110-LTB-BNB

CENTRAL MASONRY CORPORATION,

       Plaintiff,

vs.

BECHTEL NATIONAL, INC.

       Defendant.
_____

# ORDER
_____

       This matter is before me on Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and D.C.Colo.L. CivR 56.1 [**Doc # 28**] filed by Defendant Bechtel National, Inc. ("Bechtel"), seeking dismissal of the remaining claims filed against it by Plaintiff, Central Masonry Corporation ("Central Masonry"). Oral arguments will not materially aid in the resolution of this motion. After consideration of the parties' briefs, and for the reasons stated below, I GRANT the motion and DISMISS the case.

## I. Background

       Bechtel was the general contractor on a project known as the Pueblo Chemical Agent-Destruction Pilot Plant Project (the "Project"). Bechtel solicited private bids for the concrete/masonry work on the Project, and Central Masonry submitted its initial bid package on February 25, 2009. After assessing the bids and rejecting some of the bid packages submitted, Bechtel asked the remaining contractors – including Central Masonry – to submit "best-and final offers" by 5:00 PM on March 18, 2009.

On March 18, 2009, Central Masonry asserts that it experienced trouble in submitting its best and final offer through Bechtel's eRFP website. As such, it telephoned Bechtel at 4:58 PM to inform them of the problem, but was unable to speak with anyone. Central Masonry then emailed Bechtel at 5:02 PM indicating that "[w]e had every intention of making the deadline and only just now realized that we would need till tomorrow afternoon." Bechtel responded that "we cannot accept a late proposal" and thus Central Masonry's best and final offer was rejected as having been untimely submitted and it was not selected as the awarded bidder. The concrete/masonry work was ultimately awarded to Markley Construction ("Markley").

Thereafter, Central Masonry filed this lawsuit, which is before me on diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1441(b). I note that a federal court sitting in diversity applies the substantive law of the forum state which, in this case, is Colorado. *See Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002). Central Masonry's remaining claims asserted against Bechtel are state law tort claims for: Negligent Misrepresentation (Second Claim for Relief); Fraudulent Representation (Third Claim for Relief); and Non-Disclosure or Concealment (Fourth Claim for Relief).

## II. Standard of Review

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Id.* at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Id.* at 252; *Mares v. ConAgra Poultry Co., supra,* 971 F.2d at 494.

### III.  Law

Central Masonry's claims are based on Bechtel's alleged misrepresentation(s) and/or concealment(s) of material fact related to its bidding process requirements. Specifically, Central

Masonry assets that Bechtel made representations of fact, when Bechtel knew such statements were false, and also that Bechtel concealed facts from it with the intention that Central Masonry would be misled throughout the bidding process. [Doc # 34 - Final Pretrial Order]

In order to prove a negligent misrepresentation tort claim under Colorado law, a plaintiff must prove that: 1) the defendant supplied false information in a business transaction; 2) the defendant failed to exercise reasonable care or competence in obtaining or communicating that information; and 3) the plaintiff justifiably relied on the false information. *Platt v. Aspenwood Condo. Ass'n, Inc.,* 214 P.3d 1060, 1067 (Colo. App. 2009). A Colorado negligent misrepresentation claim is predicated on Section 552(1) of the *Restatement (Second) of Torts*, which provides:

> One who, in the course of his business profession, or employment, or in any other transaction in which he has a pecuniary interest supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.*; *Barfield v. Hall Realty, Inc.,* 232 P.3d 286, 290 (Colo. App. 2010).

To establish fraudulent misrepresentation, a plaintiff has to prove: 1) a knowing misrepresentation of material fact; 2) reliance on the material misrepresentation; 3) the right or justification in relying on the misrepresentation; and 4) reliance resulting in damages. *Id.*; *see also M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1382 (Colo. 1994).

Central Masonry also asserts a claim for nondisclosure or concealment. To prove fraudulent concealment, a plaintiff must demonstrate that: 1) the defendant failed to disclose a past or present fact that he or she had a duty to disclose; 2) with intent to induce the plaintiff to

take a course of action he or she would not otherwise have taken; and 3) that plaintiff justifiably relied on the omission. *Wisehart v. Zions Bancorporation,* 49 P.3d 1200, 1204 (Colo. App. 2002)(*citing Mallon Oil Co. v. Bowen/Edwards Assocs., Inc*., 965 P.2d 105 (Colo. 1998)); *see also* Colo. Jury Instr., Civil 19:2 (4th ed.).

Although it is unclear if Central Masonry is asserting a nondisclosure or concealment claim based on alleged negligence – as opposed to fraud – I note that under Colorado law such claim would be analyzed as a claim for negligent misrepresentation. *See Sheffield Services Co. v. Trowbridge,* 211 P.3d 714, 724 (Colo.App. 2009)(applying the elements of negligent misrepresentation to a "negligent misrepresentation/nondisclosure" claim). I further note that although often used interchangeably, concealment suggests affirmative acts while nondisclosure connotes inaction despite a duty. *Colorado Coffee Bean, LLC v. Peaberry Coffee Inc*., 251 P.3d 9, 16 (Colo. App. 2010).

## IV.  Analysis

In support of its motion, Betchel argues that it is undisputed that it neither provided Central Masonry with false information, nor did it misrepresent, conceal, or fail to disclose any material information related to the bidding process. As such, Central Masonry cannot prove the first element of its claims for negligent or fraudulent misrepresentation, or for non-disclosure or concealment.

In response, Central Masonry asserts that Betchel misrepresented – both verbally and in writing – that the written bid instructions would govern the bidding process when, in fact, that was not the case as it waived several of those requirements for Markley, who was ultimately awarded the contract. Specifically, Central Masonry asserts that Bechtel allowed Markley to

submit its initial bid on the wrong forms, without a bid bond, and with twelve known bid deficiencies. Then it permitted Markley to submit an incomplete best and final offer bid via email, as opposed to through its eRFP website, and subsequently accepted it through the eRFP website at 10:14 PM that evening, over 5 hours late. Finally, it allowed Markley to submit its completed best and final offer package 7 days later, and with a bid bond describing the wrong project. In contrast, Bechtel rejected Central Masonry's best and final offer – which Central Masonry asserts was otherwise complete and conformed with the bid requirements – on the basis that the request for an extension of time to submit was 2 minutes late. [Doc #28, Exhibit M, N & O] Thus, Central Masonry asserts that Bechtel misrepresented that bids that were not complete or untimely would not be considered, and it concealed or failed to disclose that it would selectively waive bidding requirements.

The Instructions to Bidders, which were included in the initial bid solicitation package, provided that:

> Proposals shall be submitted through the eRFP Web page on the forms provided with the Request for Proposal documents. . . . Partial or incomplete Proposals will not be considered and Proposals shall be in strict conformity with the Request for Proposal Documents and any addenda.
>
> Any proposal received after the due date and time stated in the Proposal Invitation Letter may be rejected. [Doc #28, Exhibit F, ¶ 1]

Under the section entitled "Proposal Submittal Requirements," the instructions state in bold that: "**Failure to complete and return <u>each</u> of the following may result in the Bidder's proposal being determined non-responsive.**" The following included the requirement that a "[b]id bond shall be submitted with your proposal in the amount of twenty percent (20%) of the total lump sum price." [Doc # 28, Exhibit F, ¶ 3]  A letter – dated February 5, 2009 and

attached as Addendum #1 to the Instruction to Bidders – further provided that "[p]artial or incomplete proposals will not be considered." [Doc # 30, Exhibit 1]

Central Masonry asserts that Bechtel further emphasized that bids would have to be complete and timely in order to be considered – consistent with the foregoing instructions – via Bechtel's verbal representations.  The affidavit of Central Masonry's President, Neal House, indicates that during the bidding process, it was "told, with great emphasis, that if the bid forms were not 100% completely and accurately filled out and all other requirements of the bid package not supplied, that the bid would be rejected and those subcontractor[s] disqualified from the bidding process."  [Doc # 30, Exhibit 7, ¶ 5]

Mr. House also avers in his affidavit that "[a]t the March 16, 2009 clarification meeting Central Masonry was told that the March 18, 2009 at 5:00 PM time for submitting best and final offer was not a drop dead time. . . . Bechtel told Central Masonry that if there [wa]s a problem submitting the best and final offer documents call them and let them know.  Bechtel would then extend the time for submission."  [Doc # 30, Exhibit 7, ¶ 11 & Doc # 28, Exhibit B, pp. 198-201]  As for its allegations of concealment, Mr. House avers that Central Masonry was "never informed by Bechtel that it would waive certain bid requirement for selected bidders" or that "bid documents could be submitted via fax or e-mail."  [Doc # 30, Exhibit 7, ¶¶ 9, 12]

Finally, Mr. House indicates that Central Masonry was "informed that there was only going to be one bid on the masonry portion of the Project [. . . and] that their initial bid needed to be their best offer."  [Doc # 30, Exhibit 7, ¶ 5]  Likewise, the Instruction to Bidders indicates that:

> Bechtel intends to award a Subcontract resulting from this solicitation to the responsible Bidder whose Proposal, conforming to the Request for Proposal, will be most advantageous to Bechtel, considering cost or price and other factors identified elsewhere in this Request for Proposal. [Doc # 28, Exhibit F, ¶ 2]

Bechtel argues, in response, that it did not supply any false information to, or conceal any material information from, Central Masonry related to the bidding process. In so doing, it notes the following provisions in the Instructions to Bidders. First, the instructions provide that:

> Bechtel may (i) reject any or all Proposals if such action is in the best interest of Bechtel or Government, (ii) accept other than the lowest priced Proposal, and (iii) waive informalities and minor irregularities in the Proposals received.
>
> Bechtel intends to evaluate proposals and award a Subcontract without discussions with Bidders. Therefore, each initial Proposal should contain the Bidder's best terms from a cost or price and technical standpoint. However, Bechtel reserves the right to conduct discussions if later determined by Bechtel's authorized representative to be necessary. [Doc # 28, Exhibit F, ¶ 2c &d]
>
> . . .
>
> Any modification of a proposal, except a modification resulting from Bechtel's request for "best and final" offer, is subject to the same conditions as the original proposal submitted. A modification resulting from Bechtel's request for "best and final" offer received after the date specified in the request will not be considered. [Doc # 28, Exhibit F, ¶ 8]

Furthermore, under a section entitled Examination of Request for Proposal Documents, the instructions provide that " . . . should any other question arise relative to the Request for Proposal Documents, the Bidder shall promptly notify Bechtel in writing through the eRFP Web page." [Doc # 28, Exhibit F, ¶4] And, "[t]he Bidder making such request will be solely responsible for its timely receipt by Bechtel." [Doc # 28, Exhibit F, ¶ 4] In addition, "[o]ral explanations or instructions given before the award of the Subcontract will not be binding on Bechtel." [Doc # 28, Exhibit F, ¶ 4]

Bechtel argues that the claimed misrepresentations were not contradictory to the instructions or to the actions it made during the bidding process, in rejecting Central Masonry's best and final offer, while accepting Markley's. I agree. Although Bechtel may have represented

8

that it was adamant that the certain requirements would have to be met in order for bids to be considered, the instructions are clear that it would have the power and discretion to "reject any or all Proposals . . . accept other than the lowest priced . . . and waive informalities and minor irregularities in the Proposals received." " [Doc # 28, Exhibit F, ¶ 2c]  In addition, it clearly provides that "[o]ral explanations or instructions given before the award of the Subcontract will not be binding on Bechtel. "  [Doc # 28, Exhibit F, ¶ 4]

To the extent that Central Masonry asserts that Bechtel misrepresented that it would not seek a final and best offer, the instructions indicate otherwise because "Bechtel reserves the right to conduct discussions if later determined by Bechtel's authorized representative to be necessary." [Doc # 28, Exhibit F, ¶ 2d]  The instructions further contemplate a possible best and final offer when it provides that "a modification resulting from Bechtel's request for 'best and final' offer received after the date specified in the request will not be considered." [Doc # 28, Exhibit F, ¶ 8] The only claimed misrepresentation that may have been inconsistent with the instructions would have been Central Masonry's assertion that Bechtel told it that if there was a problem submitting the best and final offer documents, it would "extend the time for submission."  However, Bechtel subsequently issued Addendum No. 4 which reiterated that the best and final offers "received later than the date and time listed . . . may be rejected." [Doc # 28, Exhibit L]  More importantly, as noted above, the instructions were clear that oral instructions "will not be binding on Bechtel." [Doc # 28, Exhibit F, ¶4]

As to the alleged failure to disclose, Central Masonry contends that Bechtel failed to inform it that it would waive certain bid requirement for selected bidders, including that bid documents could be submitted via fax or e-mail.  While this may be true, such waivers are

9

contemplated and allowed by the written instructions to Bidders.  In addition, Central Masonry contends that Bechtel failed to disclose that Markley was a prospective bidder on the Project. Central Masonry relies on the fact that it was not informed about a round of bidding that occurred prior to its involvement – in November 2008 – during which Markley was pre-qualified to bid, and thus the "Meeting Attendance Sheet" at the pre-bid meeting did not include Markley as a potential bidder on the Project. [Doc # 30, Exhibit 3]   In his affidavit, Mr. House averred that it is "[a]t this meeting the subcontractors get a list of or find out who are the other subcontractors bidding the job." [Doc # 30, Exhibit 7, ¶ 3]

I conclude that Central Masonry has provided me with no evidence supporting an affirmative act of concealment.  Likewise it has not argued nor provided legal authority supporting a conclusion that Bechtel engaged in an inaction or nondisclosure despite a duty.  *See Poly Trucking, Inc. v. Concentra Health Services, Inc.*, 93 P.3d 561, 564 (Colo. App. 2004)(to succeed on a claim for fraudulent concealment or nondisclosure, a plaintiff must show that the defendant had a duty to disclose material facts that in equity or good conscience should be disclosed)(*citing Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.,* 965 P.2d 105, 111 (Colo. 1998)).  Rather, it was Central Masonry's own research – to discover the other prospective bidders in order to assess its competition – that was inaccurate.

To the extent Bechtel engaged in preferential treatment in the bidding process and, perhaps, in awarding the subcontract for masonry work to Markley, Central Masonry has failed to provide specific evidentiary facts showing the existence of a factual issue of false information, active concealment, or failure to disclose despite a duty related to the bidding process in this case. I conclude that even when the facts are viewed in the light most favorable to Central Masonry, no

reasonable jury could find that Bechtel made a misrepresentation or nondisclosure during the bidding process sufficient to create a genuine issue of material fact on the first element of Central Masonry's claims raised here. Central Masonry has failed to offer sufficient evidence in this case to support a jury finding on the first element of its tort claims.

### V.  Lost Profit Damages

Bechtel also argues that even if Central Masonry's tort claims for negligent and fraudulent misrepresentation, and negligent non-disclosure/concealment survive summary judgment, it cannot, as a matter of law, seek damages at trial in the form of lost profits on the basis that a contract was not formed. However, in light of my conclusion that Central Masonry cannot survive summary judgment on its claims, I do not reach the parties' arguments related to whether Central Masonry is entitled to lost profit damages.

ACCORDINGLY, I GRANT Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and D.C.Colo.L. CivR 56.1 [**Doc # 28**], I ORDER summary judgment enter in favor of Defendant Bechtel National, Inc., and I DISMISS this case.

Dated:  March   13  , 2012 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE